# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

DERISH WOLFF,

      Defendant.

---

Crim. No. 2:11-CR-719 (FSH)

*Electronically Filed*

Motion Date: October 16, 2012

**ORAL ARGUMENT IS REQUESTED**

---

**BRIEF IN SUPPORT OF DEFENDANT DERISH WOLFF'S MOTION TO COMPEL THE DISCLOSURE OF *GIGLIO* MATERIAL**

---

**STERN & KILCULLEN, LLC**
325 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone:  973-535-1900
Facsimile: 973-535-9664

*Attorneys for defendant Derish Wolff*

**TABLE OF CONTENTS**

**Page**

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

      This Court Should Order The Government To Produce <u>Giglio</u>
      Material Within Ten Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Giglio v. United States*, 405 U.S. 150 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*United States v. Agurs*, 427 U.S. 97 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*U.S. v. Nobles*, 422 U.S. 225 (1975). . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Peek v. United States*, 321 F.2d 934 (9th Cir. 1963)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*U.S. v. Webster*, 162 F.3d 308 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8


**Court Rules and Standing Orders**

M.D.Ala.L.R.Cr.P. 16.1(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

S.D.Ala.L.R.Cr.P. 16.13(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .   8

D.Conn.L.R.Cr.P. Appendix, Standing Order on Discovery in Criminal Cases ¶A(10) . . .  8

N.D.Fla.L.R.Cr.P. 26.3(D)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

S.D.Fla.L.R.Cr.P. 88.10(d) and (q) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .   8

D.Idaho General Order in Criminal Cases No. 242 ¶5(B) . . . . . . . . . . . . .. . . . . . . . . .8

D.Kan. General Order of Scheduling and Discovery in Criminal Cases . . . . . . . . . . . . .   9

D.Mass.L.R.Cr.P. 116(b)(1) and (5) . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .   9

W.D.Tex.L.R.Cr.P. CR-16(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .   8

S.D.W.Va.L.R.Cr.P. 16.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .   8

Defendant Derish Wolff submits this brief in support of his Motion to Compel the Disclosure of <u>Giglio</u> Material.

## **PRELIMINARY STATEMENT**

For almost 60 years (from 1953 to the present), the Louis Berger Group ("LBG") provided contracting services to the United States Government and various State Governments in connection with thousands of international and domestic transportation and building construction projects and planning assignments. In 2002, LBG became a wholly owned subsidiary of Berger Group Holdings, Inc. ("BGHI"), which today also owns other construction, engineering, design, and socio-economic and environmental study concerns. Mr. Wolff began working at LBG 50 years ago in 1962, serving as LBG's President and CEO from 1982-2002 and as the Chairman of the Board of BGHI from 2002 to 2010.

Throughout the years the Defense Contract Audit Agency ("DCAA") audited LBG's billing submissions for the United States Agency for International Development ("USAID") and was provided access to LBG's staff books, records, and documentation -- as well as the full cooperation of LBG and its employees -- to ensure that LBG was appropriately billing USAID for the work being performed on these projects and assignments. When billing issues were identified, LBG worked with the DCAA auditors to resolve those issues. In fact, prior to any knowledge of any Government investigation: (1) LBG and USAID were already in the process of resolving the alleged overbilling at issue, and (2) LBG had already voluntarily and without Government demand begun issuing credits to USAID, which totaled over $4.3 million on contracts that were in the hundreds of millions of dollars.

In 2006, as a result of a *qui tam* sealed complaint, the Government began investigating LBG and Mr. Wolff for allegedly overbilling on certain foreign projects over a twenty-year plus

period.  In August 2007, the Government executed a search warrant at LBG's headquarters and seized hundreds of thousands of pages of documents and made electronic images of LBG's servers and 39 hard drives, which include millions of pages of documents.  For the next four years, the Government interviewed and re-interviewed numerous LBG employees, and ultimately questioned many of them before a grand jury before finally indicting Mr. Wolff in October 2011.

At the outset of the case, due to unavailability of the then assigned judge, the Hon. Faith S. Hochberg, U.S.D.J., to conduct the arraignment, this Court's standard Order for Discovery and Inspection for complex cases was entered by the Hon. Garrett E. Brown, Jr., Chief U.S.D.J., in the absence of this Court.  That Order requires, among other things, that the Government produce Giglio materials within 10 days after Mr. Wolff's arraignment, which was held on November 9, 2011.  The Government did not object at the time the Order was entered, or for the next six weeks before Chief Judge Brown retired on December 31, 2011.  However, after the case had been reassigned to the Hon. Susan D. Wigenton, U.S.D.J., who does not usually require early disclosure of Giglio materials, the Government moved to strike the Giglio provision based primarily on the false representation that the Giglio provision had been included by mistake. Then, after Judge Wigenton accepted the Government's misleading argument and vacated the Giglio provision, the Government insisted that it not be held to *any* definitive schedule for the production of Giglio material, but rather that it merely be required to produce Giglio materials "sufficiently in advance of the witness's testimony to avoid delay in the trial."

In its motion the Government argued that it should not have to produce Giglio material prior to trial because:

2

> Here, as in most cases, the disclosure of Giglio material prior to the Court even setting a date for trial is impractical, because the government cannot know with certainty who each and every one of its witnesses will be. This places the government in the untenable position of either disclosing the identity and Giglio material of every conceivable witness, which would be enormously burdensome and could potentially expose multiple people to unnecessary embarrassment, or disclosing the identity and Giglio material of only those witnesses who the government presently intends to call, thereby creating the risk of adverse pretrial rulings, such as witness exclusion, in the event the government changes its mind and wishes to call additional witnesses at trial.

[Doc. 14 at 3].

These excuses, however, have no substance: (1) the identity of the likely witnesses who are for the most part former fellow LBG officers and employees are hardly secret; (2) Mr. Wolff agreed to allow for the late production of Giglio material for legitimate, last minute decisions regarding witnesses; (3) the Government has never alleged that it has any reason to believe that Mr. Wolff will cause witnesses any harm; (4) the Government has been investigating this case for almost seven years and must know most, if not all, of the witnesses it intends to call at trial; (5) providing Giglio material for witnesses that the Government ultimately decides not to call at trial would not cause embarrassment to the uncalled witnesses; and (6) if the amount of Giglio material for such potential witnesses is truly burdensome it would be far better that it be produced now than during trial or even on the eve of trial.

Accordingly, we respectfully request that the Court reinstate its own order requiring the Government to produce Giglio material within 10 days.

**FACTUAL BACKGROUND RELEVANT TO THIS MOTION**

On October 19, 2011, the Government filed its Indictment against Mr. Wolff. [Doc. 1]. On November 9, 2011, Mr. Wolff was arraigned before Chief Judge Brown, who presided over the matter in the absence of this Court, to whom the case had been assigned. [Doc. 10]. On that same day, Chief Judge Brown entered this Court's standard Order in criminal cases for Discovery and Inspection (the "Discovery Order"), which requires the Government to, among other things, produce within ten days after the arraignment: "Any evidence bearing upon the credibility of any government witness, within the purview of Giglio v. United States, 405 U.S. 150 (1972), and United States v. Agurs, 427 U.S. 97 (1976)." Discovery Order (Doc. 11) at ¶1(g), attached as Exhibit A. The Discovery Order also provides that:

> If, in the judgment of the United States Attorney, in order to protect the identity of a confidential informant or undercover agent, to prevent interference with an ongoing investigation, to protect the integrity of the criminal proceeding, or to otherwise serve the interests of justice, any disclosure set forth in paragraph 1 hereof should not be made, disclosure may be declined, and defense counsel advised in writing of the declination *within five (5) days of the conference*.

Exhibit A at ¶2 (emphasis added).

That same day, Chief Judge Brown also signed an Order for Continuance on consent allowing the Government sixty days (i.e. until January 9, 2012) to make available its Giglio and other discoverable material. [Doc. 12]. Significantly, the Continuance Order did not extend the Government's 5-day deadline for notifying defense counsel of any "declination" of disclosure, nor did the Government invoke that provision of the Discovery Order even during the 60-day period.

On January 6, 2012 -- after Chief Judge Brown retired and this case was reassigned to Judge Wigenton -- the Government filed a Motion to modify the Discovery Order to strike

4

paragraph 1(g) so that the Government would not be required to produce Giglio material by any date certain, but rather simply *in advance of* the witnesses' testimony at trial.  [Doc. 14]. Ultimately, the Government relied primarily on the argument that "it is highly likely that the Giglio provision in the Discovery Order was simply a mistake." Government Reply Brief (Doc. 17) at 5, attached as Exhibit B.  The Government further contended that "this Court has consistently ordered disclosure of Giglio and Jencks material 'sufficiently in advance of the witness's testimony to avoid delay in the trial'" (Doc. 14 at 2) -- not 10 days after arraignment -- despite the fact that the Government knew that Judge Hochberg, who was assigned to this case at the time the Discovery Order was entered, routinely ordered Giglio material to be produced within 10 days. *See, e.g., U.S. v. Maguire*, Criminal No. 09-665 (FSH), Order for Discovery and Inspection of 9/9/09, Hochberg, J., at ¶1(g), attached as Exhibit C; *U.S. v. Chaudhry*, Criminal No. 06-771 (FSH), Order for Discovery and Inspection of 10/5/06, Hochberg, J., at ¶1(g), attached as Exhibit D.  Thus, the Government was well aware that it was *not* this Court's "long standing practice" to deny defendants early access to Giglio material (Doc. 14 at 3), nor was it "simply a mistake" to include the Giglio provision in the Discovery Order (Exhibit B at 5), as the Government represented in its motion.

On February 29, 2012, Judge Wigenton heard oral argument on the Government's motion. [Doc. 19].  At argument, the defense specifically noted that the Discovery Order should be treated as the law of the case, and binding. Transcript of the 2/29/12 hearing at 14:18-16:3, attached as Exhibit E.  The Government acknowledged that Judge Hochberg likely drafted the Discovery Order "because this seems to be consistent with some recent orders coming out of

5

Judge Hochberg's chambers" (*id.* at 5:10-14)[1], but then flatly contradicted itself by arguing that the District Court of New Jersey has *never* ordered the Government to turn over Giglio material so soon after arraignment, and *no one* at the U.S. Attorney's office has "ever seen this ever," referring to the Giglio provision in the Discovery Order. *Id.* at 5:15-18 and 6:15-19.

As a result of the Government's representations, Judge Wigenton focused on the Government's assertion that the language at issue was erroneously included and must have been "just an oversight or a typographical error." Exhibit E at 2:18-21; *see also id.* at 20:12-18 (stating that the Court believes the Giglio provision was included "inadvertently" and is inconsistent with the practice in the District of New Jersey). Judge Wigenton, accepting the Government's argument that "it is obviously not the practice of this Court to order Giglio materials ten days from the date of arraignment, or sometime other than sufficiently in advance of trial," granted the Government's motion and vacated the Giglio provision in the Discovery Order. *Id.* at 18:21-24.

Although Judge Wigenton ruled that it would strike the provision in the Discovery Order requiring the Government to immediately produce Giglio materials, Judge Wigenton recognized that Giglio disclosures should be made "sufficiently in advance of trial" to give "defense an opportunity to obviously receive the information and utilize it as necessary for purposes of preparing a defense." *Id.* at 18:21-25. To that end, Judge Wigenton asked the parties to "work together to see that there can be some type of agreement as to when it is appropriate to turn over

---

[1] During the hearing on the Government's motion Judge Wigenton disclosed that she had discussed the Giglio provision with Chief Judge Brown and he did not recall including that provision, leading Judge Wigenton to conclude that Judge Hochberg drafted the Discovery Order. *Id.* at 20:2-17.

6

those materials sufficiently in advance of trial so that any unnecessary delays in trial would be avoided." *Id.* at 20:21-21:2.

The Government, however, refused to commit to *any* definitive schedule for the production of Giglio material and instead submitted a proposed form of order that merely required the Government to produce Giglio materials "sufficiently in advance of the witness's testimony to avoid delay in the trial." Superseding Order for Discovery and Inspection (Doc. 22) at ¶4, attached as Exhibit F. Judge Wigenton entered the Government's proposed order over Mr. Wolff's objections. *See* 3/7/12 and 3/16/12 letters from Mr. Wolff to the Court, attached as Exhibits G and H; *see also* the Court's Text Order dated 3/28/12, attached as Exhibit I.

**ARGUMENT**

**THIS COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE *GIGLIO* MATERIAL WITHIN 10 DAYS**

The original Discovery Order requiring the Government to produce Giglio material within ten days of arraignment was not a mistake and, moreover, this Court had sound basis for issuing that order. Certainly the Court has the authority to require early disclosure of Giglio material[2] and, in fact, many District Courts across the country have local rules and standing orders requiring early disclosure of Giglio material. *See, e.g.,* M.D.Ala.L.R.Cr.P. 16.1(a)(1)(C) (at arraignment); S.D.Ala.L.R.Cr.P. 16.13(b)(1)(C) (at arraignment); N.D.Fla.L.R.Cr.P. 26.3(D)(2) (within 5 days after arraignment); D.Idaho General Order in Criminal Cases No. 242 ¶5(B) (within 7 days after arraignment); S.D.W.Va.L.R.Cr.P. 16.1(c) (within 10 days after arraignment); D.Conn.L.R.Cr.P. Appendix, Standing Order on Discovery in Criminal Cases ¶A(10) (within 14 days after arraignment); S.D.Fla.L.R.Cr.P. 88.10(d) and (q) (within 14 days after arraignment); W.D.Tex.L.R.Cr.P. CR-16(b)(1) (within 14 days after arraignment);

---

[2] *See, e.g., U.S. v. Nobles*, 422 U.S. 225, 231 (1975) ("Decisions of this Court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination and the truth-finding process may be enhanced.") (citations omitted); *U.S. v. Webster*, 162 F.3d 308, 339 (5th Cir. 1998) ("a district court possesses inherent powers 'reasonably useful to achieve justice,' including certain powers over the administration of civil and criminal discovery. … The existence of the federal rules does not preempt this power, if the rules do not exclude the exercise of the specific putative inherent power.") (internal citations omitted); *Peek v. United States*, 321 F.2d 934, 942 (9th Cir.1963) ("[Q]uite apart from [Fed. R. Crim. P.] Rules 16 and 17(c) the court possesses inherent authority to grant requests for production of material.")

D.Mass.L.R.Cr.P. 116(b)(1) and (5) (within 28 days after arraignment); D.Kan. General Order of Scheduling and Discovery in Criminal Cases at 2 (within 30 days after arraignment).

There is no valid reason why the Government should not be required to immediately produce Giglio material in this case. In its January 6, 2012 motion for a protective order, the Government argued that because it did not yet know with certainty the identity of its witnesses, it would face the untenable conundrum of either (1) disclosing "the identity and Giglio material of every conceivable witness" (which the Government baldly asserted would be "enormously burdensome" and "could potentially expose multiple people to unnecessary embarrassment") or (2) disclosing "the identity and Giglio material of only those witnesses who the Government presently intends to call," which the Government contended creates a "risk" of "witness exclusion" should the Government later wish to call additional witnesses at trial. [Doc. 14 at 3]. At the time, these arguments fell short of the required showing of good cause necessary to obtain a protective order denying Mr. Wolff discovery and now, over 7 months later, they are even less viable.

First, the Government's contention that the defense should not be permitted to use the early disclosure of Giglio material to learn the identity of government trial witnesses (Doc. 14 at 2-3) is based on inapposite cases involving violent or drug-related offenses and ignores that here the names of witnesses are primarily Mr. Wolff's co-workers. The allegations here involve corporate accounting fraud committed over a twenty-year period by persons within LBG who, according to the indictment, allegedly acted under Mr. Wolff's direction and supervision. The investigation was commenced as the result of a *qui tam* law suit brought by a relator named

9

Harold Salomon, a former employee who publicly identified himself as the relator nearly two years ago. Two other employees, Salvatore Pepe and Precy Pellettieri, entered guilty pleas and are identified by name in the indictment. It is well known to those in the company during the investigation, including Mr. Wolff, that the company interviewed and the Government re-interviewed employees, and many of those same persons were questioned before a grand jury (with some being granted immunity). We have reason to believe that many of these witnesses changed their story over time under duress by the Government and it is critical that the Government produce all information that potentially could be used to prepare Mr. Wolff's defense. Thus, seven years after the investigation began, there is no mystery about the identity of the witnesses, nor is there any concern that the safety or security of witnesses would be jeopardized by early disclosure. There is a real concern, however, that continued delay of <u>Giglio</u> production will prejudice the defense's ability to demonstrate the repeated changes in the testimony of these witnesses as the result of prolonged negotiations between their counsel and counsel for the Government.

The Government has not explained, nor can we see how providing <u>Giglio</u> material for witnesses that the Government ultimately decides not to call at trial would present any prohibitive burden on the Government or cause embarrassment to some uncalled witness. Mr. Wolff certainly has no interest in publicizing any information, embarrassing or otherwise, about persons who do not testify in this matter, and an appropriate agreement can certainly address that circumstance. Even the Government's own Attorneys' Manual does not recognize potential witness "embarrassment" as grounds for refusing to produce <u>Giglio</u> material, instead citing only

10

concerns over "witness security and national security" as valid bases for such a refusal (USAM 9-5.000(D)(2)), neither of which is an issue here, as even the Government has obviously acknowledged.

If, indeed, the amount of Giglio material for potential witnesses is truly burdensome, it should be produced now rather than during trial or even on the eve of trial when disclosure will unnecessarily burden the defense and inconvenience the Court and jury.  The Court, the Government and the defense have all recognized that this is a complex matter involving millions of pages of discovery, events at issue that transpired over a twenty-year plus period involving scores of contracts, and numerous witnesses.  Exhibit E at 19:10-12.  Early pretrial disclosure of Giglio material will enable the defense to better and more efficiently prepare for trial.  It is obviously critical that Mr. Wolff's attorneys are properly prepared to defend the charges against him, and the circumstances of this case present no reason why such preparation should not begin sooner rather than later.  Immediate disclosure of Giglio material regarding the witnesses who have changed their accounts, have been afforded some type of immunity or have been promised some other benefit or promise of leniency will best ensure that the interests of justice are served.

Lastly, there is no basis to suggest any genuine risk of witness exclusion because the Government only learns later of a witness. [Doc. 14 at 3].  Nevertheless, to resolve this issue, if the Government complies in good faith with an Order requiring early disclosure of Giglio material for expected Government witnesses, Mr. Wolff would certainly agree to allowing for genuine last minute decisions, provided the defense is afforded sufficient time after the Giglio disclosure to prepare for cross examination.

11

## **CONCLUSION**

An Order was issued which was in conformity with this Court's usual practice of requiring immediate disclosure of Giglio material. The Government improperly ignored the Order and then improperly moved to change it. It is well within this Court's discretion to reinstate its own practice. Accordingly, for all the foregoing reasons, the Court should grant Mr. Wolff's motion and order the Government to produce Giglio material within 10 days.

                                       **STERN & KILCULLEN, LLC**
                                       *Attorneys for defendant Derish Wolff*

                                       *s/ Jeffrey Speiser*
                                       Herbert J. Stern
                                       Mark Rufolo
                                       Jeffrey Speiser
                                       Michael Dinger

Date: August 23, 2012